IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARON L. MORRISON,

       Plaintiff,

      vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

Civil No. 05-3047-AS

FINDINGS AND RECOMMENDATION

---

ASHMANSKAS, Magistrate Judge:

    Claimant, Sharon Morrison, brings this action pursuant to the Social Security Act (Act), 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's (Commissioner) final decision.  The Commissioner denied Morrison's claim for Disability Insurance Benefits (DIB).  For the reasons set forth below, the Commissioner's decision should be affirmed.

/ / / / /

1 - FINDINGS AND RECOMMENDATION                 [LB]

## PROCEDURAL BACKGROUND

Morrison filed her application for DIB on March 15, 2000, and April 20, 2000, alleging disability since December 15, 1999, due to chronic cervical strain, myofascial pain syndrome, tenosynovitis, migraines, herniated disc, ruptured disk and shoulder pain. Morrison's application was denied initially and on reconsideration. On May 13, 2002, after a timely request for a hearing, Morrison appeared and testified before an administrative law judge (ALJ). Morrison was represented by counsel, Robert Webber. Dennis Elliott, a vocational expert (VE), also appeared and testified.

On May 30, 2002, the ALJ issued a decision finding Morrison not disabled, as defined in the Act, through the date of the decision. Morrison filed a request for the review of the ALJ's decision on June 25, 2002, and almost three years later, on April 12, 2005, the Appeals Council denied Morrison's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 422.210.

## STATEMENT OF FACTS

The medical records submitted in this case accurately set forth Morrison's medical history as it relates to her claim for benefits. The court has carefully reviewed the medical records submitted here, and the parties are familiar with the records. In addition, the Commissioner stipulates to the ALJ's summary of the medical and testimonial evidence. Accordingly, the details of

2 - FINDINGS AND RECOMMENDATION                    [LB]

those medical records will not be recounted here.

Morrison was 48 years old at the time of the hearing; had completed the ninth grade; and had past relevant work experience as a motel housekeeper, cannery worker and fruit picker. Morrison had not engaged in substantial gainful activity since the onset date of disability.

At the 2002 hearing, Morrison testified on her own behalf. Morrison testified regarding her limitations, her daily activities and her past work experiences. Morrison testified that "I have pain all over my body. Some days are worse than others. I don't sleep well at night; I'm up and down all night long. I don't sleep with my husband because I keep him awake. I haven't been for the last two years, but -- I hurt all day, too. I -- tired, exhausted." Morrison also testified that at times she is able to stand an hour or two at one time. Morrison stated that at least once a week she is unable to get out of bed all day because "I just hurt all over and it feels like I have real bad flu symptoms, but I don't have the flu. I just ache -- just all over." On an average day, Morrison stated that she will "lay down about three or four times a day" between 15 minutes and one hour at a time.

The VE testified that Morrison's past relevant work as a fruit farmer was classified as unskilled medium work and as cannery worker and housekeeping cleaner was classified as unskilled light work. Based on the ALJ's hypothetical, the VE opined that Morrison

would have the residual functional capacity (RFC) to return to her past relevant work as a cannery worker and housekeeping cleaner.

The ALJ found that Morrison met the disability insured status requirements of the Act on December 15, 1999, the alleged disability onset date, and she had sufficient quarters of coverage to remain insured through the date of his decision; the medical evidence established that her ability to work was limited by a combination of impairments considered severe, but she did not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; Morrison's statements regarding her impairments and their impact on her ability to work were not totally credible; and she retained the RFC to perform substantial gainful activity in her past relevant work as a cannery worker and housekeeping cleaner. Accordingly, the ALJ found that Morrison was not disabled under the Act because she retained the RFC to perform past work.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; the court may not substitute its judgment for that of the Commissioner's. Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 20 C.F.R. §§ 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process

for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." <u>Id</u>.; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work in the national economy. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden, then claimant is deemed

not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

Morrison contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the ALJ erred as a matter of law in denying her claim.  Specifically, Morrison argues that the Commissioner erred by:  (1) rejecting the opinion of her treating pain specialist, Dr. Gilberston;  (2) substituting his opinion for that of her doctor; (3) rejecting her testimony; and (4) failing to present a complete hypothetical question to the VE and disregarding the VE's testimony.  The court has considered these challenges to the Commissioner's decision and, based on the grounds set forth below, has determined that there is substantial evidence in the record to support the ALJ's finding that Morrison was not disabled.

## I.   Medical Testimony

Morrison contends the ALJ improperly rejected the opinion of her treating pain specialist, Dr. Gilberston.   In addition, Morrison argues that the ALJ erroneously substituted his own opinion for that of Dr. Gilbertson and made independent medical findings.   Specifically, Morrison challenges both the ALJ's rejection of Dr. Gilbertson's May 2001 medical opinion, and the conclusions drawn by the ALJ from Dr. Gilbertson's January 2002 Progress Note.

The weight attributable to the opinion of a medical source

depends, in part, on the relationship between the physician and the claimant.  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records.  Holohan v. Massanari, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The treating physicians' uncontroverted "ultimate conclusions . . . must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1989).  Although the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability . . . he cannot reject them without presenting clear and convincing reasons for doing so."  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(quotations omitted); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)("reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion").  "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings."  Embery, 849 F.2d at 422.

In May 2001, Dr. Gilbertson assessed Morrison, in part, as follows:

> You have diagnosed Ms. Morrison [as having] fibromyalgia which started as right upper quadrant pain syndrome induced by trauma.  She had a herniated disk with post laminectomy type syndrome. . . .  You also believe she has chronic depression partly related to her disabilities.
>
> It is your opinion that Ms. Morrison could do light work on good days and on bad days she could not do sedentary work and the days are not predictable.  It is conceivable that during the winter months she could have as many bad days as good days and she may be unable to work, half the time.  During the summer, she could have more good days.
>
> As for your opinion regarding sitting and standing, you indicated she would need to change positions very frequently; that standing in one spot for any prolonged period of time would cause problems, especially with the post laminectomy syndrome on top of the fibromyalgia.  In fact, she would need to lie down or be in a recliner occasionally for these conditions.  On a good day, you feel that she may need to be in a recliner several times a day and on a bad day, she may need to be there most of the day.  At her highest level of functioning, you said she may be able to go four hours before needing to lie down for 15 to 30 minutes.
>
> You also indicated she is on oxycontin which is a fairly strong mind altering pain medication and may affect her ability in terms of concentration, pace, and persistence.  She also has break through pain medication and on bad days, she would probably take more of that and on good days, maybe none.  Therefore, on her bad days she might have more dysfunction and be unable to work and on her good days, she is marginal.
>
> You feel that her depression makes her slower, affects her thought process, her ability to concentrate, and probably, even to some degree, her cognitive function. . . .

However, just four months later, on September 24, 2001, Dr. Gilberston reported in her Progress Note that Morrison's FMS (Fibromyalgia Syndrome) and depression were both improved.  In fact, Morrison reported to Dr. Gilberston that she was walking two

miles every day and stated that she enjoyed it; she had an increase in energy; and while she would wake up often she was able to go back to sleep.  In January 2002, Dr. Gilbertson's Progress Notes reveal that Morrison was experiencing some success and improvement in her pain management treatments.

It is noteworthy that the May 2001 assessment took the form of a memorialization by Morrison's counsel, Robert Webber, of a telephone conversation between Webber and Dr. Gilbertson.  In a letter to Dr. Gilberston dated May 30, 2001, Webber set forth the content of the conversation and requested Dr. Gilbertson to approve the document by providing any corrections and signing and dating the letter.  One year passed before Dr. Gilbertson provided one correction and signed the letter.  In fact, Dr. Gilbertson singed the letter on May 13, 2002, the date of Morrison's hearing before the ALJ.

Morrison argues that in signing and dating the letter one year later, in May 2002, Dr. Gilberston "endorsed" the contents as being contemporaneous, rather than only relating back to May 2001.  As such, Morrison maintains that a conflict in the evidence arose between Dr. Gilbertson's May 2002 assessment and her assessments of September 2001 and January 2002.  Based on this alleged conflict, Morrison insists that the ALJ had a duty to contact Dr. Gilbertson to seek additional evidence and resolve the discrepancies.

The court disagrees that the ALJ was required to contact Dr.

Gilbertson.   In reaching his determination that Dr. Gilbertson's

May 2001 opinion was not conclusive of disability the ALJ stated:

> In May 2001, the claimant's representative drafted a letter to
> Dr. Gilbertson for her signature, purportedly setting forth
> the substance of a telephone discussion regarding the
> claimant, describing in significant detail restrictions
> equating to disability, including but not limited to an
> inability to do even sedentary work and to lie down ib a
> recliner several times a day on a "bad day," speculating
> without any reasonable medical basis that "during the winter
> months she could have as many bad days as good days and she
> may be unable to work half the time," and that she would need
> to change position frequently.   This opinion letter is not
> persuasive.  The description written does not comport with Dr.
> Gilbertson's chart notes in May 2001, when it was drafted, or
> in May 2002 when it was signed by Dr. Gilberston and submitted
> into evidence after the hearing.  The content of the letter
> itself is somewhat unconventional in that it does not provide
> a narrative by the physician herself, but rather an attorney-
> drafted description of a conversation.  Most importantly, the
> letter was written by the representative on May 30, 2001,
> obviously to reiterate a reasonably contemporaneous telephone
> conversation; it was date stamped "received" on June 1, 2001.
> However, the letter was not signed until May 13, 2002, almost
> a full year later, and then faxed to the representative the
> following day.  It would appear, that for whatever reason, Dr.
> Gilbertson had declined to sign the opinion letter when it was
> first sent to her a year earlier.  She signed the letter on
> May 13, 2002, when she had not seen the claimant for four
> months.  Further, Dr. Gilbertson's chart notes from their most
> recent visit in January 2002, are totally contradictory to the
> content of the opinion letter.   In January 2002, Dr.
> Gilberston had indicated that the claimant was exercising
> regularly, had gotten "over the hump" of fatigue, was waling
> every day, no longer feeling exhausted, doing more at home,
> and sleeping well, while planning a return to school; she had
> only some minor physical complaints, but generally not pain.
> The statements in this letter are accepted only to the extent
> that they are consistent with Dr. Gilbertson's own treating
> records, and the evidence as a whole.

There is insufficient medical evidence of impairment

consistent with Dr. Gilbertson's May 2001 assessment of Morrison's

alleged functional limitations to warrant re-opening the record.

The ALJ properly noted that Dr. Gilbertson's chart notes were inconsistent with her May 2001 assessment. The ALJ is permitted to rely on contradictions between a treating physician's opinion of claimant's abilities and the physician's clinical notes and observations as clear and convincing reasons for rejecting evidence. <u>See</u>, <u>e.g.</u>, <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>see</u> <u>also</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1464-65 (9th Cir. 1996)(Where there are inconsistencies between treatment notes and the opinion offered, the ALJ is permitted to consider the fact that the opinion was solicited.).

The record shows that Morrision did not return to Dr. Gilberston for medical care anytime after January 2002. In fact, the only other medical evidence in the record after that date are Dr. Michael Thein's reports, dated January and March 2002, and those reports are in accordance with Dr. Gilbertson's September 2001, and January 2002, assessments of Morrison's functioning. The ALJ's rejection of Dr. Gilbertson's opinion of disability is supported by substantial evidence and was based on permissible determinations within the ALJ's province.

Morrison also challenges the ALJ's assessment of Dr. Thein's medical opinion. She argues that "the ALJ's assessment of [her RFC] was erroneous for its failure to take into account the combined effects of [Morrison's] pain, fatigue, side effects of medications with her ongoing mental impairments of depression and

dependant personality disorder."  In addition, Morrison contends that the ALJ was required to contact Dr. Thein to determine the significance of Dr. Thein's reports relative to the overall question of the severity of [Morrison's] medical impairments."

The record reveals that in December 2001, Dr. Gilbertson referred Morrison to Dr. Michael Thein.  Dr. Thein saw Morrison on two occasions, once on January 16, 2002, for a brief initial evaluation and once on March 18, 2002, for follow-up.  Dr. Thein's notes from Morrison's March 2002, visit provide the following information on her condition:

> I short-circuited this appointment today.  It was suppose to be a Full Psychiatric Evaluation, but I really don't see a need for a full psychiatric evaluation.  This patient is not very complex.  She is doing well.  She tolerates her medications well. . . .  At any rate, the patient is at her baseline.  She is without psychiatric complaints.  Her depression remains just reactive and lately her life has been going well.  Her stressors are minimal, and her pain is better treated now.  She is walking better now.  She of course denies suicidal and homicidal ideation.  She remains compliant with the use of the medication and denies any significant side effect problems.

As stated above, Dr. Thein's assessment was in accordance with that of Dr. Gilbertson's Progress Notes.  Moreover, each physician's assessment was based both on their first-hand observations and evaluations of Morrison's functional limitations as well as Morrison's self-report of her level of impairment or perhaps, more appropriately, her lack of impairment.  Following these evaluations, Morrison sought no additional treatment.  Thus, the medical record concludes with Morrison exercising regularly;

sleeping better; and, reporting less fatigue, less pain and less depression.  There is substantial evidence in the record to support the ALJ's finding that Morrison did not suffer a disabling level of impairment.

## II.  Morrison Credibility

Morrison next argues that the ALJ failed to identify clear and convincing reasons for rejecting her testimony and that testimony should be credited as a matter of law because it is supported by the record.  Indeed, Morrison charges that the ALJ "misstat[ed] the record in his summary of the medical evidence . . . in a manner apparently designed to discredit [her] credibility."  Morrison maintains that the ALJ is required to identify specific testimony found not credible and explain what evidence undermined that testimony.  See Reddick, 157 F.3d at 722.

It is well-settled law that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  See, e.g., Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  If there is evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-348 (9th Cir. 1991)(en banc).  "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and

convincing.'"  <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).
General findings will not satisfy the ALJ's burden; rather, the ALJ
must identify what testimony is not credible and the evidence
relied upon for that finding.  <u>Id</u>. at 834.

In weighing a claimant's credibility, the ALJ may consider her
reputation for truthfulness, inconsistencies either in her
testimony or between her testimony and her conduct, her daily
activities, her work record and testimony from physicians and third
parties concerning the nature, severity and effect of the symptoms
of which she complains.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1281, 1284
(9th Cir. 1996).  An ALJ may properly discredit a claimant's
allegations of disability "if [the] claimant is able to spend a
substantial part of his day engaged in pursuits involving the
performance of physical functions that are transferable to a work
setting," or if there is evidence of "an unexplained, or
inadequately explained, failure to seek treatment or follow a
prescribed course of treatment."  <u>Fair v. Bowen</u>, 885 F.2d 597, 603
(9th Cir. 1989).

Regarding Morrison's testimony concerning her pain and
functional limitations, the ALJ stated, in part, that:

> In the larger picture, the evidence shows that following her
> second surgery in December 1999, the claimant experienced a
> gradual orthopedic recovery with development of diffuse
> trigger point tenderness apart from generally good range of
> motion and function.  Following various therapeutic trials,
> Oxycontin provided significant relief in 2000, and during 2001
> the claimant had increased her walking to two miles a day.
> The record shows that she did better physically with pain

15 – FINDINGS AND RECOMMENDATION                                    [LB]

control and depression when she was walking regularly. Fibromyalgia is typically improved with exercise and other physical activity, as is depression. By late 2001 and early 2002, she was no longer having significant sleeping difficulties or pain. Her testimony at the May 2002 hearing, that she is exhausted because she doesn't sleep and is up and down all night and has pain all over her body, is contrary to the most recent treatment records from Dr. Gilberston in January 2002 which indicate that she was sleeping well except perhaps one night a week, and was "generally without pain" with only some minor physical complaints. The fact that the claimant had not returned to Dr. Gilbertson since is indicative of continuing improvement in her overall symptomology with use of Ritalin. Her testimony that she has "bad days" once a week were she is essentially bedridden is not only unsupported by the medical evidence, but contradicted by it, as previously discussed. It is of note that the claimant is described as having a dominant dependency component to her personality, which likely increases her investment in obtaining disability. Her daily activities in terms of household chores and social relationships are essentially unimpaired. Although she reports that she takes naps on a daily basis, and spends time reading in a recliner, this is not unusual for an unemployed person, but there is no credible medical necessity for this.

In considering the proper wight to be given Morrison's testimony, the ALJ followed the law of this Circuit by identifying specific testimony and providing reasons from the record to support his decision to discredit that testimony. For example, the ALJ cited Morrison's testimony that she had "bad days" once a week and was bedridden. In response, the ALJ noted the contradictory evidence of record, including undisputed evidence that Morrison was walking two miles each day and enjoyed it. Another example is Morrison's testimony that she was exhausted because she did not sleep, was up and down all night, and had pain all over her body. The ALJ noted that her hearing testimony was contradicted by

medical evidence that Morrision slept well most nights; was generally without pain; and, had only minor physical complaints.

Finally, Morrison testified that she was not capable of performing any work activities. Yet the record reveals that Morrison exercised, performed household chores, managed the family finances, intended to take computer classes and was pursuing administrative avenues to establish that she was one quarter Native American in order to qualify for financial support to attend school. This evidence is inconsistent with Morrison's claim that she is unable to perform any work-related activities.

Thus, as set forth above, the ALJ identified specific evidence in the record that was inconsistent with Morrison's claim of a disability rendering her unable to work. Accordingly, there is substantial evidence to support the ALJ's credibility determination that Morrison's testimony of disabling pain was not supported by other evidence of record.

## IV. VE Hypothetical and Testimony

Finally, Morrison contends that the ALJ improperly relied on the VE's opinion. According to Morrison, the ALJ initially failed to posit a complete hypothetical reflecting all of her functional limitations. Moreover, after Morrison's counsel put forth an accurate hypothetical, the ALJ disregarded the VE's response. As such, it was error for the ALJ to consider the VE's testimony in determining Morrison's RFC.

An ALJ posing a hypothetical question to a VE "must set out all the limitations and restrictions of the particular claimant." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989)(quotations omitted). It is, however, proper for an ALJ to limit a hypothetical to only those restrictions which are supported by substantial evidence in the record. Id. at 756-757. Thus, in order for the VE's opinion to constitute "substantial evidence" supporting a finding of the claimant's ability to perform work, a hypothetical question posed to the expert must include all the claimant's limitations and restrictions, unless the ALJ has validly rejected a restriction. Embrey, 849 F.2d at 422-23.

At step four of the sequential evaluation, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. § 404.1520(e). Although the burden of proof lies with the claimant at step four, the ALJ "still has a duty to make the requisite factual findings to support his decision." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing Social Security Ruling (SSR) 82-62). As such, the ALJ must look at the RFC and the physical and mental demands of the claimant's past work in making findings of fact as to the past work's requirements. 20 C.F.R. § 404.1520(e); SSR 82-62.

In his written decision, the ALJ concluded that Morrision had the following RFC:

is limited from lifting and carrying more that 10 pounds frequently with an occasional 20 pound maximum. She is

18 - FINDINGS AND RECOMMENDATION                                    [LB]

limited to occasional stair climbing, stooping, kneeling, crouching, and crawling. She has difficulty standing over one to two hours at a time. She needs an occasional opportunity to change position. She has moderate limitations following detailed instructions and independently formulating plans and goals.

This assessment is consistent with the medical evidence in the record. Based on the ALJ's RFC findings, the ALJ concluded at step four that Morrison could return to her past relevant work as a housekeeping cleaner and cannery worker.

If the ALJ finds that a claimant is able to return to her past relevant work, the testimony of a VE is unnecessary. See, e.g., Matthews, 10 F.3d at 681 (a vocational expert's testimony useful but not required at step four). Thus, the ALJ's determination at step four that Morrision was capable of performing her past work did not require the testimony of a VE. Id.; compare Polny v. Bowen, 864 F.2d 661, 663-664 (9th Cir. 1988)("If the claimant is unable to perform his past work and has significant non-exertional limitations, then the testimony of a vocational expert is required to demonstrate the existence of specific jobs that the claimant is capable of performing despite these restrictions.").

Initially, the court finds that because the ALJ ultimately concluded that Morrison could return to her past relevant work, the VE's testimony was not required and his testimony was not relevant to the ultimate conclusion. However, even assuming the testimony of the VE was necessary, the court finds that the hypothetical posed to the VE was substantially supported by the record. The ALJ

properly summarized and included all of Morrison's limitations in his hypothetical to the VE.   The ALJ's hypothetical described Morrison as limited from lifting and carrying; limited in climbing, stooping, kneeling, couching or crawling; limited in standing; and limited in following detailed instructions and independently formulating plans and goals.

The ALJ's hypothetical included all credible medical and testimonial evidence and, as such, was sufficient.   The ALJ is permitted to disregard limitations that are unsupported by the record.   See Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (The ALJ's hypothetical "must be accurate, detailed, and supported by the medical record.").   The court finds that the ALJ posed a hypothetical to the VE premised on the functional limitations that were supported by the record as a whole.

**CONCLUSION**

Based on the foregoing, the decision of the Commissioner should be AFFIRMED.   Accordingly, Morrison's complaint (doc. #1) should be DISMISSED and all other motions should be DENIED as moot.

Dated this 21st day of June 2006.


     /s/Donald C. Ashmanskas
          Donald C. Ashmanskas
     United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due July 6, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.